IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SUSAN FREDRICKSON, | ) | |
|          Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07 C 6157 |
| | ) | |
| VILLAGE OF WILLOW SPRINGS, ALAN | ) | Judge Grady |
| NOWACZYK, and ANNETTE KAPTUR, | ) | Magistrate Judge Nolan |
| | ) | |
|          Defendants. | ) | |

### DEFENDANTS' REPLY
### IN SUPPORT OF THEIR MOTION TO DISMISS

**NOW COME** the Defendants, Village of Willow Springs, Alan Nowaczyk, and Annette

Kaptur, by and through their attorneys, Odelson & Sterk, Ltd., and John Murphey, and for their

Reply in Support of their Motion to Dismiss, state as follows:

### I.   THE VILLAGE OF WILLOW SPRINGS APPOINTS ITS VILLAGE CLERK

Plaintiff's assertion that her position as Willow Springs Village Clerk, was elective in

nature is completely false. (Plaintiff's Response , pp. 7-11)   There is no legal or factual basis to

make such a claim. The Willow Springs Village Clerk has been appointed on an annual basis since

1988.  Village documents clearly demonstrate that plaintiff was aware throughout her employment

that the Village President annually appointed her to the Village Clerk position. See Village

Meetings  Minutes, attached to Defendants' Motion for Sanctions as Group Exhibit A. The minutes

prove that the Village Board of Trustees voted to approve the Village President's appointment of

Plaintiff to the Village Clerk position for one-year terms on, at least, the following dates: May 11,

2000; June 28, 2001; June 13, 2002; May 8, 2003; May 13, 2004; and  October 20, 2005. Except

for the meeting in 2001, Plaintiff was present for all of these meetings and actually signed the

minutes as the Village Clerk.

In other Village documents, Plaintiff in fact, certified that she was the "appointed" Village

Clerk. The signed Certificate, which also contains the seal of the Village of Willow Springs, states,

"I, Susan Fredrickson, certify that I am the duly **appointed** and acting Village Clerk of the Village

of Willow Springs, Cook County, Illinois." (Emphasis added.) (Ex. B to Defendants' Motion for

Sanctions)

In Defendants' Memorandum in Support of Their Motion to Dismiss, Defendants clearly

established the law in Willow Springs is that the Village Clerk position is an appointed position.

Defendants maintain their argument and incorporate as though fully set forth herein.  Plaintiff

responds to Defendants' position by making an illogical, confusing, and unsupported argument.

For example, in Plaintiff's part IV due process argument, there are many "partial" citations and

inaccurate quotes and mischaracterization of statutory cites.  Additionally, the Plaintiff thoroughly

confuses the doctrine of "in *pari materi*" in an attempt to some how drag the Election Code into a

cause of action which only deals with whether the mayor can appoint a new village clerk upon the

conclusion of the prior clerk's term of appointment. Black's Law Dictionary, 8th Edition, defines in

*pari materi* as follows: 1. On the same subject; relating to the same matter. Certainly, the

appointment of the village clerk has nothing to do with the election of a village clerk, which is

what the Illinois Election Code concerns itself with in relation to all state and local elections.

First, lets look at the Election Code and the cites misapplied and miscited by the Plaintiff.

At page 10 of the Plaintiff's Response she cites 10 ILCS 5/2A-27 as some type of authority that a

clerk should be elected rather than appointed.  Not only is this section inappropriate for the case

before this Court, since it applies to clerks who are elected, rather than appointed, it also only

applies to cities who elect a mayor, clerk and treasurer.  Further, and even more disturbing is the

Plaintiff's quoted section at the bottom of page 10 wherein she quotes the Election Code to say that

2

a city clerk "shall be elected" from this section of the Election Code. Reading the full section, again which only applies to cities, we find that the election code states as follows:

> "A mayor, a city clerk, and a city treasurer shall be elected in each city
>
> **that elects those officers** (except the City of Chicago) . . ."

Thus, this section found within the chapter of the Election Code entitled, "TIME OF HOLDING ELECTIONS", not only applies just to cities, but also, only to cities that "elect its officers." If the Plaintiff had read a little further in the Election Code, the timing of elected village clerks falls under 10 ILCS 5/2A-30, entitled VILLAGES AND INCORPORATED TOWNS WITH POPULATION OF LESS THAN 50,000 - PRESIDENT-TRUSTEES-CLERK. This section provides, in part, as its last paragraph, as follows:

> "In villages and incorporated towns with a population of less than
> 50,000, a clerk shall be elected at the consolidated election in every
> other odd-numbered year **when the clerk is elected for a 4 year term,**
> and in each odd-numbered year when the clerk is elected for a 2 year
> term." (Emphasis added)

This section gives the schedule of when a clerk stands for election, when a clerk is elected. Of course, this has no application to the case at bar, since the village clerk in Willow Springs, pursuant to statute and ordinance is an appointed position.

The Plaintiff further attempts to confuse provisions not only between the Election Code and provisions in the Municipal Code, but also within the Municipal Code. Plaintiff cites 65 ILCS 5/3.1-30-5 at page 10 of her brief for the proposition that this section does not designate the village clerk as an "appointed" official. She is correct, but once again, this section has noting to do with the issue before this Court pertaining to when the Village Clerk can be appointed, or must be

3

elected. By merely going back two (2) sections in the Municipal Code to 65 ILCS 5/3.1-25-90, a

complete explanation is found under the title **Election or Appointment of Clerk; Term;**

**Vacancy.** This is the operative section under which the Village of Willow Springs made an

election when it was below 5,000 inhabitants to have the Village Clerk appointed, rather than

elected. Once doing this, the Village Clerk remains an appointed position until such time as a

referendum is initiated as specifically provided in section 5/3.1-25-90(b) which states as follows:

> "In any village where the clerk is appointed as provided in this Section,
>
> the clerk may later be elected, but only after a referendum initiated and
>
> held as provided in this Section ... If a majority of the electors in the
>
> village voting on the question vote in the affirmative, the village clerk
>
> shall thereafter be elected. If a majority of the electors voting on the
>
> question vote in the negative, the village clerk shall continue to be
>
> appointed." (Emphasis added)

The specific delegation of authority by the General Assembly in the Municipal Code for the

appointment of the Clerk is found in the above-quoted section. There is no other grant of authority

by the General Assembly for a municipality to either automatically go from an appointed to an

elected clerk by operation of law or otherwise; nor is there any other direction in the law other than

the specific direction to have a referendum, as cited above. All of the nonsense about reading the

Election Code and the Municipal Code in *pari materi*, to find a different interpretation is exactly

that - nonsense.

An example of a statutory provision giving specific direction to a municipality when the

population exceeds 5,000 people is found at 65 ILCS 5/10-2.1-1, which is the provision providing

for a board of fire and police commissioners. This section gives specific direction to the

4

municipality that once it reaches the population of 5,000, it ". . . shall appoint a board of fire and police commissioners." This section clearly defines the transition of a municipality under 5,000 population to a municipality of over 5,000 population as to its mandatory acts. Similarly, the Illinois Pension Code provides an automatic transition for municipalities which exceed 5,000 inhabitants to participate in the Illinois Municipal Retirement Fund. This section gives specific direction from the General Assembly that a municipality, once reaching 5,000 population comes under the provisions of 40 ILCS 5/7-132.

Similar provisions are not found for the appointed position of village clerk. The transition for village clerk from appointed to elected is through the referendum process as specified above.

Plaintiff makes arguments concerning the legislative intent of the General Assembly and how this Court should some how read into the appointed clerk statute a natural transition from an appointed clerk to an elected clerk after a village exceeds the 5,000 population mark. Not only can this not be read into the statute, but this Court should not attempt to find some strained legislative intent when the statute in question is clear and unambiguous on its face. The Illinois Supreme Court, as recently as eight days ago (April 23, 2008), had occasion to opine on a provision in the Illinois Municipal Code as it related to the Illinois Election Code. In *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, ____ N.E.2d ___, 2008 WL 18333 (S.Ct., April 23, 2008). The Supreme Court interpreted section 3.1-10-5(b) of the Illinois Municipal Code as it related to the eligibility of a candidate to seek elective office. The Court gave a detailed analysis as to the rules of statutory construction as follows:

> "The controlling principals are familiar. The primary rule of statutory
> construction is to ascertain and give effect to the intention of the
> legislature. The best evidence of legislative intent is the language used

5

in the statute itself, which must be given its plain and ordinary

meaning. The statute should be evaluated as a whole, with each

provision construed in connection with every other section. (citing

cases) When the statutory language is clear, no resort is necessary to

other tools of construction. (citing cases)" *Cinkus*, 2008 WL 18333, at

*8.

Interestingly, this case also construes the Illinois Municipal Code in *pari materi* with the
Illinois Election Code and specifically finds that the Illinois Municipal Code provides:

"The general election law applies to the scheduling, *manner of

conducting*, voting at, and contesting of municipal elections."

(Emphasis added.) 65 ILCS 5/3.1-10-10.

The Court further finds as follows:

"A court presumes that the legislature intended that two or more

statutes which relate to the same subject are to be operative and

harmonious. A court must compare statutes relating to the same subject

and construe them with reference to each other, so as to give effect to

all of the provisions of each if possible." (citing cases.) *Cinkus*, 2008

WL 18333, at *9

The Illinois Election Code sets forth the scheduling, manner of conducting, and voting, and
the contesting of municipal elections as cited above. It does not have anything whatsoever to do
with the appointment or election authority concerning a village clerk in a municipality.

The Plaintiff cites, *United Citizens of Chicago and Illinois v. Coalition to Let the People to
Decide in 1989*, 125 Ill.2d 332, 531 N.E.2d 802, 126 Ill. Dec. 175. This case, which counsel for

6

Defendants participated in , decided that the Election Code and the Illinois Municipal Code could be read in *pari materi* and it was the court's obligation ". . . to ascertain and give effect to the legislative intent. . . . . It is presumed that they are: "Governed by one spirit and a single policy, and that the legislature intended the enactments to be consistent and harmonious. (Citations) [Furthermore,] it is clear that sections in pari materi should be considered with reference to one another so that both sections may be given harmonious effect."(citations) *United Citizens of Chicago and Illinois*, 125 Ill.2d 332 at 339.

This case is very important when considering the Election Code and the Municipal Code and the Supreme Court concluded as follows:

> "While the Election Code provides for uniformity and stability in the
> elected offices, the Illinois Municipal Code responds to specific and
> extraordinary circumstances not covered in the general scheme of
> elections created by the Election Code." *United Citizens of Chicago
> and Illinois,* 125 Ill.2d 332 at 342.

Finally, looking at another case cited by the Plaintiff, *Betts v. Village of Calumet Park*, 20 Ill.2d 524, 170 N.E.2d 563, the Supreme Court found as follows:

> "We regard as well settled the rule that the method of appointment of
> other than constitutional officers is solely within the discretion of the
> State legislature." *Betts*, 20 Ill.2d 524 at 525.

The Illinois Municipal Code sets forth the procedures to go from an elected village clerk to an appointed village clerk and further specifies how to go from an appointed village clerk to an elected village clerk. The provisions as cited above relative to needing referendum approval are clear on its face, and does not beg for judicial interpretation.

7

II.     **COMPLAINT FAILS TO STATE A DUE PROCESS**
        **PROPERTY INTEREST OR LIBERTY INTEREST CLAIM**

Defendants respectfully contend Plaintiff had nothing more than an unilateral expectation

of being reappointed as Village Clerk.  As stated below, an unilateral expectation of reappointment

does not create a property interest in the position.  Plaintiff responds by claiming she had a

property interest in the Village Clerk's position based upon the Village's personnel policy.

(Plaintiff's Response pp.11-12)   The Village's personnel policy, however, specifically disclaims

the creation of any contract:

> "Nothing in this manual shall be construed to (1) give any employee of
> the Village any right to continuation of benefits ...   (2) be evidence of
> any agreement or understanding expressed or implied that the Village
> will employ or continue to employ  any particular employee ... or (3)
> create any rights, and therefore nothing contained herein represents any
> type of contact of employment." (See Article 1, Section 1.1 of the
> Village's personnel policy, attached hereto as Exhibit A)

Moreover, Section 5.12 of the personnel policy is not ambiguous, as suggested by Plaintiff.

(Plaintiff's Response, p.11)  The fact that Plaintiff claims she was terminated on the basis of

"political activities or views" does not create an ambiguity in Section 5.12, or any other section of

the personnel policy. Thus, there are no ambiguities in the personnel policy which can be construed

against the Village to support Plaintiff's property interest claim.  Plaintiff's cited authority does

nothing to support her position. *Perman v. ArcVentures*, 196 Ill. App. 3d 758 (1st Dist. 1990)

involved a covenant not to compete clause and grievance procedures.  While *Dayman v. Harden*

8

*County General Hospital*, 210 Ill. App. 3d 927 (5th Dist. 1990), held the Defendant's employee

handbook did not create any enforceable contractual rights.

Contrary to Plaintiff's claim, Plaintiff was not terminated or dismissed because of her

"political activities or views." Plaintiff was not reappointed because of the Village's economic

condition. It was determined that the positions of Village Clerk and Village Administrator could be

handled by one individual. Subsequent to July 13, 2007, the Village Clerk and Village

Administrator's duties were performed by one person, which saved the Village thousands of

dollars.

Nothing in either 65 ILCS 5/3.1-25-90(a) or local ordinance creates any legitimate claim of

entitlement to reappointment to the position of village clerk once the incumbent's term has expired.

A unilateral expectation "will not suffice" to create a protected property interest because a property

interest is not legally cognizable unless that person has a legitimate claim of entitlement to it. *Deen*

*v. Darosa*, 414 F. 3d 731, 734 (7th Cir. 2005).

Plaintiff's property interest claim is foreclosed by the Seventh Circuit's analysis in *Pleva v.*

*Norquist*, 195 F. 3d 905 (7th Cir. 1999).[1] The *Pleva* plaintiff was a member of a board of zoning

appeals (BOZA) by appointment of the mayor. The mayor chose not to reappoint him to the

position. In rejecting plaintiff's property interest claim with respect to reappointment, the Seventh

Circuit relied on the familiar principal set forth in *Board of Regents v. Roth*, 408 U.S. 564, 577

(1972), that when an appointment contains no provision for reappointment, there was "absolutely

no possible claim of entitlement to reemployment." 195 F. 3d at 914. *Pleva* further found that

because "the statute and ordinance creating the board do not contain provisions for reappointment

---

[1]    Plaintiff apparently accepts the *Pleva* holding, as she has failed to distinguish that case
or even address its holding in her Response.

9

of its members after expiration of the three year term ... *Pleva* had no valid expectation of continued employment secured by statute." 195 F.3d at 914.

Section 3.1-25-90(a) of the Illinois Municipal Code simply authorizes the village president (mayor) to appoint a clerk with the concurrence of the village board. The statute does not create any claim of entitlement to reappointment so as to create a property interest. Similarly, Section 1-5c-2 of the Village Code specifies "the term of office of the village clerk shall be for one year commencing May 1 ... and shall terminate on April 30 of the following year." There is no basis for Plaintiff to claim that she has a property interest in a renewed appointment. Accordingly, Plaintiff's due process property interest claim should be dismissed.

Plaintiff's liberty interest claim similarly fails. 'When a government employer terminates the employment of an individual and in so doing casts doubt on that individual's good name, reputation, honor or integrity in such a manner that it becomes virtually impossible for that person to find new employment in her chosen field, "the government has infringed upon that individual's liberty interest to pursue the occupation of [her] choice." *Boyd v. Owen*, 481 F.3d 520 524 (7th Cir. 2007). In order to state a liberty interest claim, a party must allege that a public official made false defamatory statements of fact about the plaintiff and the reason for her termination as to make it virtually impossible for that person to find new employment. *Fenie v. Feld*, 398 F. 3d 620, 627 (7th Cir. 2005). As stated above, Plaintiff was not terminated as Village Clerk, rather, she was not reappointed to another one year term.

Moreover, Plaintiff has not alleged a liberty interest claim in connection with her nonrenewal, as Village Clerk. Plaintiff has cited no authority to support the proposition that the decision to not reappoint someone to an appointed position, in and of itself, is defamatory, or makes it virtually impossible for that person to find a job. Because there are no allegations relating

10

to stigmatizing charges made concurrently with the nonrenewal of Plaintiff's appointment as

Village Clerk, Plaintiff's Complaint fails to state a liberty interest claim. (See *Patterson v. City of

Utica*, 370 F. 3d 322, 330 (2nd Cir. 2004.)

## III.    THE POSITION OF VILLAGE CLERK IS POLICYMAKING AND/OR CONFIDENTIAL FOR FIRST AMENDMENT PURPOSES. THEREFORE, A PUBLIC EMPLOYER MAY APPOINT A VILLAGE CLERK BASED ON POLITICAL OR PARTISAN CONSIDERATIONS

### 1.    The Office of Village Clerk is Confidential for First Amendment Purposes, and Hence Exempt from Political Retaliation Claims

Plaintiff claims she was not a policymaking or confidential employee, therefore, she did not

hold an exempt position pursuant to *Elrod v. Burns*. (Plaintiff's Response pp.1-5)

The Seventh Circuit has characterized confidential employees as those who "while not

decision-makers, are in close contact with policymakers" and their records and for whom "political

antipathy can serve as a decent proxy for a lack of trust and loyalty." *Meeks v. Grimes*, 779 F. 2d 417,

420 (7th Cir. 1985); *Cygnar v. City of Chicago*, 865 F. 2d 827, 845 (7th Cir. 1989). The determination

that a position is exempt from First Amendment claims can be made as a matter of law when the nature

of the position and its duties are clear. *Pleva v. Norquist*, 195 F.2d 905, 912 (7th Cir. 1999).

An appointing municipal authority may clearly take political affiliation into consideration

before appointing somebody to a position of such essential political confidentiality. A local

government cannot function if the appointing authority is prevented from choosing someone whom

that authority trusts to keep and maintain this most sensitive of information.

In light of the Village Clerk's responsibility as the "confidential secretary" to the

deliberations of the corporate authorities, *Soderbeck v. Burnett County, Wisconsin*, 752 F. 2d 285

(7th Cir. 1985) is dispositive. In *Soderbeck*, the Court held that an incoming elected official may

terminate a confidential secretary for political reasons without violating the First Amendment.

11

Judge Posner's opinion held that even though an employee is not a policymaker, she may be terminated for political reasons if she is in a confidential position: "You cannot run a government with officials who are forced to keep political enemies as their confidential secretaries.... It need not be a policy-making office. If Rosalyn Carter had been President Carter's secretary, President Reagan would not have had to keep her on as his secretary." 752 F. 2d at 288. See also *Soderstrum v. Town of Grand Isle*, 925 F. 2d 135 (5th Cir. 1991) (confidential secretary of incoming government official may be replaced; no First Amendment claim).

In a real legal sense, the Village Clerk is the confidential secretary to the Willow Springs President and Board of Trustees in the most sensitive of all matters relating to municipal government. No less than the sheriff in *Soderbeck*, the President and Board of Trustees of the Village of Willow Springs may choose not to retain a political enemy as their confidential secretary without running afoul of the First Amendment. Because the First Amendment does not prevent a municipality and its elected officials from taking "political" matters into account in the appointment to the office of Village Clerk, Plaintiff's First Amendment freedom of association claim fails.

Plaintiff attempts to distinguish *Jarman v. City of Northlake*, 1998 W.L. 341632 (N.D. Ill. 1998) by claiming the case was decided on a factual basis at summary judgment and not on a motion to dismiss. (Plaintiff's Response p. 4) Plaintiff misreads *Jarman*, as the court stated the proper inquiry is to examine the 'powers inherent in a given office, rather than the actual functions performed.' *(Jarman*, 1998 W.L. 341632 pp. 3-4) Judge Conlon examined the statutory functions of municipal clerks and found the plaintiff, a deputy clerk, exempt under *Branti* and *Elrod*. Contrary to Plaintiff's claim, there is no need for a factual basis to determine if Plaintiff, as Village Clerk, is exempt from First Amendment protection.

12

Plaintiff's reliance on *Wilhelm v. City of Calumet City*, 409 F. Supp. 2d 991 (N.D. Ill.

2006) is misplaced.  In *Wilhelm*, Judge Guzman declined to engage in the analysis of the municipal

clerk's duties, as was done in *Jarman*.  In denying the City's motion for summary judgment, Judge

Guzman identified the fact that the City had failed to offer any law or facts to support its argument

that Plaintiff Wilhelm was exempt from First Amendment protection as a policymaker.  In the

instant case, the Village has offered sufficient law and facts that Plaintiff Fredrickson was a

"confidential" employee, therefore, Plaintiff is exempt from First Amendment protection.

### 2.    The Office of Village Clerk Is Policymaking, and Hence Exempt from First Amendment Political Retaliation Claims

Plaintiff held a policymaking position with the Village of Willow Springs.  Although the

Court need not reach the "policymaker" issue, the Village Clerk's position is also policymaking as

a matter of law. As Judge Conlan found in *Jarman v. City of Northlake*, 1998 WL 341632 (N.D.

Ill. 1998) (at *4), "municipal clerks perform a range of statutory functions defined by Illinois law,"

which include "official custodian of municipal records, 65 ILCS 5/3.1-35-90(a); attendance at and

maintenance of the local record of meetings of corporate authorities, including closed executive

sessions, 65 ILCS 5/3.1-35-90(a); ex officio 'local election official,' 10 ILCS 5/1-3; deputy

registrar of voters, 10 ILCS 5/5 and member of the local electoral board. 10 ILCS 5/7-12.1,

5/10-9." Given this statutory structure, the court had no difficulty concluding that the position of

municipal clerk was policymaking. Relying on the Seventh Circuit's decision in *Kline v. Hughes*,

131 F. 3d 708 (7th Cir. 1997), the court found that the position of municipal clerk and deputy clerk

were policymaking for First Amendment purposes.

Defendants respectfully submit that "the inherent powers of the office" of municipal clerk

as identified by statute and ordinance demonstrate that political affiliation is an appropriate

13

criterion for appointment and removal to such office. *Allen v. Martin*, 460 F. 3d 939, 945 (7th Cir.
2006). Plaintiff's First Amendment political retaliation should be dismissed.

## IV.    FREEDOM OF SPEECH CLAIMS

Paragraphs 16-21 of the Complaint alleges Plaintiff's nonrenewal was based in part on
retaliation for her having spoken out on matters of public concern regarding present and past
Willow Springs administrations. (Plaintiff's Response p. 5)

The Seventh Circuit has repeatedly held that if a public employee or office-holder's position
is exempt from patronage dismissal claims, then "the First Amendment does not prohibit the discharge
of [such] policy-making employee when that individual has engaged in speech on a matter of public
concern in a manner that is critical of superiors or their stated policies." *Vargas-Harrison v. Racine
Unified School District* 272, F. 2d 964, 971 (7th Cir. 2001); *Warzon v. Drew*, 60 F. 3d 1234, 1234 (7th
Cir. 1995). In essence, the Seventh Circuit has "determined that with respect to these employees, the
*Pickering v. Board of Education*, 391 U.S. 563 (1968) analysis regularly results in a determination that
the employer's need for political allegiance from its policymaking employees outweighs the
employee's freedom of expression to such a degree that it obviates *Pickering* balancing."
*Vargas-Harrison*, *supra*, citing *Bonds v. Milwaukee County*, 207 F. 3d 969, 977 (7th Cir. 2000).

Complaint, paragraph 16, specifically and repeatedly alleges that the speech which Plaintiff
claims is protected is "speech critical of her superior's work-related policies." For example,
paragraph 16A's protected speech claim involves such things as "what had actually and factually
transpired during the prior administration of the village." Unquestionably, plaintiff's free speech
activities consists of criticism of her political superiors. She is not claiming, for example, that she
was nonrenewed because of her speech about the way her superiors (the Village Board) were
running Willow Springs government. Under these circumstances, no fact specific inquiry is

14

necessary under *Vargas-Harrison*. Plaintiff's First Amendment speech claim fails as a matter of law.

Plaintiff has failed to respond to Defendants' arguments stated above. Rather, Plaintiff responds by asserting Mayor Nowaczyk violated the Village code and municipal code by terminating Plaintiff on July 13, 2007, and replacing her on July 17, 2007. (Plaintiff's Response pp. 5-7) The municipal code and Village code sections relied upon by Plaintiff have no bearing in this case, as those sections deal with removal of appointed officers pursuant to written charges and vacancies created by a municipal officer's resignation. (See 65 ILCS 5/3.1-35-10 and 65 ILCS 5/3.1-10-50) Moreover, any alleged violation of the municipal code by terminating Plaintiff and replacing her at a subsequent board meeting, does nothing to support Plaintiff's constitutional claims.

## V.   TRUSTEE KAPTUR SHOULD BE DISMISSED

It is undisputed that on July 13, 2007, Plaintiff was told by Mayor Nowaczyk she was not going to be reappointed as Village Clerk. Plaintiff's Complaint does not allege that Trustee Kaptur was present on July 13, 2007; had any involvement with informing Plaintiff she was not going to be reappointed; or had any involvement in making the decision not to reappoint Plaintiff. Pursuant to 65 ILCS 5/3.1-25-90 of the Municipal Code, the Village President holds the power to appoint or reappoint the Village Clerk. Plaintiff cannot establish that Trustee Kaptur was personally responsible in the nonrenewal of Plaintiff's appointment. Pursuant to the municipal code, Trustee Kaptur had no authority to renew or not renew Plaintiff's appointment. Plaintiff's claim against Trustee Kaptur should be dismissed.

15

## VI.    PRESIDENT NOWACZYK AND TRUSTEE KAPTUR ARE ENTITLED TO QUALIFIED IMMUNITY

As public officials, Nowaczyk and Kaptur are entitled to qualified immunity under *Harlow v. Fitzgerald*, 457 U.S. 800 (1982) and its progeny, e.g., *Vose v. Kliment*, 506 F. 3d 565 (7th Cir. 2007). In order to overcome this immunity, Plaintiff must show that the law was clearly established in the Spring of 2007 that (I) local public officials could not take political affiliation or related speech matters into account when renewing the appointment to the office of village clerk; and (ii) that an appointed municipal clerk was entitled to some sort of due process hearing in the event of a decision by the corporate authorities not to reappoint that person to the office.

In order to show that the right in question is clearly established, a party must either have authoritative precedent on point, or have a constitutional violation "so patently obvious that widespread compliance with the law has prevented the court from reviewing it." *Boyd v. Owen*, 481 F. 3d 520, 526-7 (7th Cir. 2007). Put another way, qualified immunity protects these defendants "unless the constitutionality of their actions was apparent either because a case on point or closely analogous establishes the unconstitutionality of their actions, or because the contours of the right are so established as to make the unconstitutionality obvious." *Id.* at 527.

As the discussion above demonstrates, Defendants respectfully submit that the law is clear that an outgoing appointed municipal clerk has neither a liberty nor a property interest in renewal of an annual appointment. The law is also clearly established that the position of municipal clerk is exempt from First Amendment free speech or association claims with respect to appointment nonrenewal. At an irreducible minimum, the cases discussed above demonstrate that the propositions which Plaintiff is trying to establish in this lawsuit were not clearly established at the time the Willow Springs corporate authorities chose not to renew this annual appointment.

16

## VII.    CONCLUSION

For the foregoing reasons set forth above, the Defendants respectfully request that this

Court dismiss all federal claims against the Village of Willow Springs and the individual

Defendants, and any other relief this Court deems fit.


Respectfully Submitted,

**VILLAGE OF WILLOW SPRINGS**

By:_____ /s:/ Michael J. McGrath_____


**ALAN NOWACZYK and ANNETTE KAPTUR**

By:_____ /s:/ John Murphey_____


Michael J. McGrath
ODELSON & STERK, LTD.
3318 W. 95th Street
Evergreen Park, IL 60805
708-424-5678

John B. Murphey
Rosenthal, Murphey & Coblentz
30 N. LaSalle Street
Suite 1624
Chicago, IL 60602
312-541-1070

17

Nothing in this manual shall be construed to (1) give any employee of the Village any right to continuation of benefits or policies herein stated; (2) be evidence of any agreement or understanding express or implied that the Village will employ or continue to employ any employee at any particular rate of remuneration or with any benefit outlined herein; or (3) create any rights, and therefore nothing contained herein represents any type of contract of employment.

It is the policy of the Village that all employees are at-will employees and may be terminated by the Village at any time when the Village determines at its sole discretion that is in the best interests of the Village to do so.

## 1.2 Code of Ethics

All members of the Village Staff should assume an obligation to maintain the highest standards of professionalism as public employees. It shall be the duty and role of each Village employee to strive to:

A. Effectively administer and implement the policies and procedures as established by the Village Board of Trustees, or their representative(s).

B. Provide the highest level of service to the public in an impartial and efficient manner.

C. Comply with all laws, ordinances, rules and regulations as required.

D. Encourage and maintain open communications between the Village Government and the citizens of Willow Springs.

E. Interact with the public in a polite and cooperative manner to provide a positive image of the Village of Willow Springs.

F. Maintain a spirit of cooperation and teamwork between fellow employees to effectively carry out the goals and tasks of the organization.

G. Maintain the highest level of honesty and integrity in all dealings with the public, outside parties and other employees.

## 1.3 Coverage of Personnel Policy Manual Provisions

This Personnel Policy Manual has been adopted by the Village Board under (Resolution)/Ordinance 98-R-9 The provisions of this Personnel Policy Manual are applicable to all appointed officers and regular and temporary employees of the Village

2

**EXHIBIT A**