07-6157.081-RSK                                            August 4, 2008

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

SUSAN FREDRICKSON,            )
                              )
            Plaintiff,        )
                              )
        v.                    )      No. 07 C 6157
                              )
VILLAGE OF WILLOW SPRINGS,    )
ALAN NOWACZYK and ANNETTE     )
KAPTUR,                       )
            Defendant.        )

## MEMORANDUM OPINION

Before the court are two motions: (1) defendants' motion to dismiss; and (2) defendants' motion for sanctions. For the reasons explained below, we deny both motions.

## BACKGROUND

This case arises from the defendants' decision to terminate plaintiff Susan Fredrickson as village clerk of the Village of Willow Springs ("Willow Springs," or the "Village") on July 13, 2007. (Compl. ¶ 14.) She was replaced four days later on July 17, 2007. (Id.) According to Fredrickson, the stage was set for her dismissal two years earlier when defendant Alan Nowaczyk, currently Willow Springs's village president, and other members of the "United Peoples Party" were elected and assumed control of the Village's government. (Id. at ¶ 10.) Fredrickson was "friendly" with members of the ousted "Neighborhood Organization Party" and

- 2 -

had worked with members of that party for at least some portion of her decade-long tenure as village clerk. (Id. at ¶¶ 7, 11.) She alleges that after the election Nowaczyk and defendant Annette Kaptur, a Willow Springs trustee affiliated with the United Peoples Party, harassed her for her affiliation with the Neighborhood Organization Party and undermined her performance as village clerk. (Id. at ¶¶ 12-13.) On several occasions between April 2005 and July 2007, the defendants "cast aspersions and made misrepresentations about what had occurred with the prior administration." (Id. at 16A.) When Fredrickson publicly objected, she alleges that the defendants "became motivated to terminate" her. (Id.) She also provoked the defendants' ire by speaking out on "financial matters" concerning the Village, and by publicly objecting when Nowaczyk and Kaptur demanded that she make "false and inaccurate" changes to the Village board's meeting minutes. (Id. at ¶¶ 16B-C.) In addition, she details a petty "campaign of harassment [and] intimidation" intended to make her toe the party line. (Id. at ¶ 17; see, e.g.,id. at ¶ 17F (Alleging that Fredrickson was "[r]eprimanded and denigrated by Nowaczyk for political reasons for assisting a family whose home was destroyed by fire.").)

Fredrickson has filed a six-count complaint. She seeks damages under 42 U.S.C. § 1983 for alleged violations of her First Amendment rights of political association and free speech (Count I)

- 3 -

and her Fourteenth Amendment right to due process of law (Count II).  In addition, she alleges state law claims for tortious interference with prospective economic advantage (Count III), retaliatory discharge (Count IV) and civil conspiracy (Count V). Finally, she requests an order of mandamus compelling the defendants to reinstate her as village clerk (Count VI). Defendants have moved to dismiss the entire complaint, but at our suggestion the parties agreed to brief Fredrickson's constitutional claims (Counts I and II) first.  The portion of defendants' motion addressing the remaining counts is denied without prejudice to raise these arguments again at the appropriate time.

**DISCUSSION**

**A.    Legal Standard**

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits.  5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 354 (3d ed. 2004).  When evaluating such a motion, the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  Hentosh v. Herman M. Finch Univ. of Health Sciences, 167 F.3d 1170, 1173 (7th Cir. 1999); Jang v. A.M. Miller & Assocs., 122 F.3d 480, 483 (7th Cir. 1997).  However, the "allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'"

- 4 -

EEOC v. Concentra Health Serv., Inc., 496 F.3d 773, 776-77 (7th Cir. 2007) (quoting Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007)).   Our Court of Appeals has cautioned courts and litigants against "overread[ing]" Bell Atlantic, see Limestone Dev. Corp. v. Village of Lemont, Ill., 520 F.3d 797, 803 (7th Cir. 2008), and the Supreme Court has since dispelled the notion that it had abandoned notice pleading.   See Erikson v. Pardus, 127 S.Ct. 2197 (2007).   So, "heightened fact pleading of specifics" is still not required.   Killingsworth v. HSBC Bank Nevada, 507 F.3d 614, 618 (7th Cir. 2007) (citation and internal quotation marks omitted). Nevertheless, the complaint must "contain enough facts to state a claim to relief that is plausible on its face."   Id.

To state a claim under 42 U.S.C. § 1983, Fredrickson "must allege that a government official, acting under color of state law, deprived [her] of a right secured by the Constitution or laws of the United States."   Estate of Sims ex rel. Sims v. County of Bureau, 506 F.3d 509, 514 (7th Cir. 2007).   Defendants do not dispute that they were acting under color of state law when they terminated (or declined to reappoint) Fredrickson.   They do contest Fredrickson's allegations that they deprived her of her First and Fourteenth Amendment rights.

**B.   First Amendment Claims**

Fredrickson alleges that the defendants improperly replaced her as village clerk because she is affiliated with their political

rival. She also alleges that the defendants were motivated to terminate her because she publicly defended the previous administration and objected when she was pressured to make improper changes to board minutes. Defendants contend that the village clerk position is exempt from First Amendment protection under Elrod v. Burns, 427 U.S. 347 (1976) and its progeny.

### 1. Political Patronage Claim

"A public agency that fires an employee because of his political beliefs or political affiliations infringes his freedom of speech . . . but there are exceptions to this principle, carved out to minimize its adverse impact on the effective functioning of government." Soderbeck v. Burnett County, 752 F.2d 285, 288 (7th Cir. 1985) (internal citations omitted). The Supreme Court's decision in Branti v. Finkel, 445 U.S. 507 (1980) "allows an employee to be fired if 'the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved.'" Id. (quoting Branti, 445 U.S. at 518). Branti's functional analysis refined and expanded the Court's plurality decision in Elrod v. Burns, which articulated categories of employment ("policymaking" and "confidential") for which political affiliation is a permissible consideration. See Branti, 445 U.S. at 518. Although these labels are not determinative, they still provide a useful handle on a notoriously slippery subject. See Matlock v. Barnes, 932 F.2d 658,

- 6 -

662 (7th Cir. 1991) ("[T]hough a functional approach is now preferred to a definitional one, the descriptions 'policymaking' and 'confidential' accurately describe the vast majority of offices that fall within the realm of legitimate patronage."); Riley v. Blagojevich, 425 F.3d 357, 359 (7th Cir. 2005) (table of Seventh Circuit decisions applying Elrod/Branti and reaching different conclusions regarding ostensibly similar jobs). Whether a particular position is exempt is ordinarily a question of fact, but the job's parameters — defined by statute, ordinance, etc. — may be clear enough to permit the court to make that determination as a matter of law. Pleva v. Norquist, 195 F.3d 905, 912 (7th Cir. 1999). In making that determination, we rely on the office's inherent powers: whether the plaintiff actually exercised those powers is irrelevant. Id. at 913. "[D]efendants bear the burden of establishing that political affiliation is an appropriate qualification for the job from which plaintiff is ousted." Matlock, 932 F.2d at 663.

Defendants point out that the village clerk has access to "closed session" board meetings at which the board discusses sensitive confidential information. See Illinois Open Meetings Act, 5 ILCS 120/2.06(a) ("All public bodies shall keep written minutes of all their meetings, whether open or closed, and a verbatim record of all their closed meetings in the form of an

audio or video recording.")[1] They argue that this fact brings the village clerk within the "confidential employee" exemption:

> The basis for exempting this type of employee is that political antipathy can serve as a decent proxy for a lack of trust and loyalty where the employee's responsibilities include a duty to shield the decisionmaking process from the outside world. The possibility of "leaks" from employees with access to sensitive information is a constant threat to any unit of government.

Meeks v. Grimes, 779 F.2d 417, 420 (7th Cir. 1985).[2] Defendants argue, in effect, that the board cannot function effectively in closed-session meetings with a member of the opposing political party in their midst. That after all is the standard, and not simply whether the plaintiff has access to confidential information. Carlson v. Gorecki, 374 F.3d 461, 466 (7th Cir. 2004) ("Access to confidential information alone, however, does not mean

---

[1] See also Duty of County Clerk to Take Minutes of County Board Meetings, 2000 Ill. Atty. Gen. Op. 004 ("The Open Meetings Act specifically requires that minutes be kept of all meetings, whether open or closed. Because minutes of closed meetings must be kept, and it is the statutory duty of the clerk to keep those minutes, it is my opinion that *the clerk must be permitted to be present at closed as well as open meetings of the board* for the purpose of taking minutes.") (emphasis added).

[2] Defendants rely chiefly on dicta from the Seventh Circuit's decision in Soderbeck. See 752 F.2d at 288 ("You cannot run a government with officials who are forced to keep political enemies as their confidential secretaries . . . ."). But as the Court later explained, Soderbeck described a position outside the standard Elrod/Branti model. See Meeks, 779 F.2d at 422-23. It is not (or at least not primarily) the risk of leaks that warrants exempting "confidential secretaries." Id. at 422. Instead, they are exempt because they work in such close proximity to policymakers that it would unrealistic to expect the parties to overcome their political animosity and work together effectively. Id. at 423 ("It would strain credulity to read the First Amendment or Elrod to require an elected official to work in constant direct contact with a person viewed as a political enemy."). Here, neither party claims that the village clerk works in "constant contact" with the village president or any other political official. Id. at 423.

- 8 -

that the job is confidential for purposes of applying the confidential employee exception to the ban on patronage dismissals."). But the Village's need to shield closed-session proceedings from the public is not unique or exceptional. Other municipalities necessarily face similar concerns, and yet the clerk is elected in every city in Illinois (65 ILCS 5/3.1-20-5) and in every village that is not eligible (or has not chosen) to appoint its clerk pursuant 65 ILCS 5/3.1-25-90(a). See infra, Part C.2.a. In those municipalities, the clerk may belong to a different political party than other government officials. Indeed, the board members themselves may belong to different parties. These officials are expected to protect the confidentiality of closed-session meetings notwithstanding their different political allegiances. We are not persuaded that Willow Springs cannot operate effectively under comparable circumstances. Cf. Meeks, 779 F.2d at 421 ("[I]t would cast the net of the Elrod exception too wide to allow political support to be used to extrapolate a tendency to breach a sworn duty, behave unprofessionally, or commit criminal acts.") (emphasis added). Moreover, Fredrickson alleges that she served for twelve years as village clerk under at least two different administrations. See Carlson, 374 F.3d at 464-65 (In applying Branti's functional test, the "historical treatment of the position" is relevant.). She alleges that she served for over two years after Nowaczyk was elected. It is at best uncertain at this

- 9 -

point whether the clerk's presence at closed-session meetings makes political loyalty a job requirement.  See Soderbeck, 752 F.2d at 288.

Defendants also argue that the village clerk is a policymaking position, citing Jarman v. City of Northlake, No. 97 C 6024, 1998 WL 341632 (N.D. Ill. June 24, 1998).  In Jarman, Northlake's former deputy city clerk alleged that she was fired because she was affiliated with the defendants' political opponent.  Id. at *3. Relying on Illinois' Municipal and Election Codes, the court concluded that the deputy clerk "has an inherent ability to influence policy making matters and could potentially play a vital role in the implementation of the city clerk's policies."  Id. at *5.  We are not persuaded that the provisions the Jarman court relied on confer policymaking authority.  The village clerk's record-keeping functions, set forth in the Municipal Code (65 ILCS 5/1-2-5, 5/3.1-35-90(a)) and Village Ordinance 1-5C-3, are ministerial.  See Wilhelm v. City of Calumet City, Ill., 409 F.Supp.2d 991, 999 (N.D. Ill. 2006) (concluding that the clerk's record-keeping functions are ministerial and denying the defendants' motion for summary judgment); see also Matlock, 932 F.2d at 664 ("A job that is merely ministerial is not 'policymaking.'").  The Jarman court also relied on Election Code provisions providing that the clerk shall serve as a "local elections official" and "deputy registrar of voters."  1998 WL

- 10 -

341632, *4 (citing 10 ILCS 5/1-3 and 5/5-4).  But the court did not specify what policymaking functions the clerk performed in those capacities.  For example, as deputy registrar the clerk accepts voter registrations and transmits them to the county clerk.  10 ILCS 5/5-16.2.  First, these are ministerial functions, and second, the Election Code expressly prohibits deputy registrars from engaging in any partisan political activity while performing their duties.  Id. ("No deputy registrar shall engage in any electioneering or the promotion of any cause during the performance of his or her duties.").  The village clerk's responsibilities as a "local election official" are also limited.  See 10 ILCS 5/10-6.2 and 5/10-8 (The local election official accepts nomination petitions and objections thereto.); see also People ex rel. Giese v. Dillon, 107 N.E. 583, 584 (Ill. 1914) (A local election official does not have any "discretionary power when a petition proper on its face is filed. His only function is to determine whether, upon the face of the petition, it is in compliance with the law."); Welch v. Educational Officers Electoral Bd. for Proviso High School District 209, 750 N.E.2d 222, 230-31 (Ill. App. 2001) (similar, citing Dillon).

The clerk also serves on the electoral board that "hear[s] and pass[es] upon" objections to candidate nominations.  10 ILCS 5/10-9.  Although this provision confers decision-making authority, the clerk is required to exercise that authority independently and

- 11 -

impartially.  See Tobin for Governor v. Illinois State Board of
Elections, 268 F.3d 517, 522 (7th Cir. 2001) (Conferring absolute
immunity to members of the analogous Illinois State Board of
Elections "to protect the board members from harassment and
intimidation so that they can exercise their independent
judgment."); Girot v. Keith, 818 N.E.2d 1232, 1237 (Ill. 2004)
(Concluding that parties appearing before the election board "are
guaranteed the right to a fair and impartial tribunal.").  The
clerk's duty while serving on the electoral board is to "protect
the integrity of the electoral process," Tobin for Governor, 268
F.3d at 522, not to implement the policies of his or her political
superiors.  We conclude that defendants have not met their burden
to establish that the village clerk position falls within the
Eldrod/Branti exemptions permitting politically-motivated
terminations.[3]

    2.  *First Amendment Retaliation Claim*

    Fredrickson alleges that her public statements concerning
"matters of public concern" were a motivating factor in defendants'
decision to terminate her.  (Compl. ¶ 16.)  "As a general rule, the

_____

    [3]  Defendants hint that the clerk's responsibilities may, in fact, be
broader than appears on the face of the relevant statutes and ordinances.  (See
Def. Mem. at 2 ("In Willow Springs she has various other duties, including being
designated a department head and having a deputy assistant.").)  Defendants do
not develop this argument, and in any event it is beyond the scope of a motion
to dismiss.  It is, however, an appropriate subject for discovery.  See Carlson,
374 F.3d at 464-65 (In applying Branti's functional test, the court "considers
both the historical treatment of the position and the actual work performed by
the people who hold the position.").

- 12 -

government cannot retaliate against its employees for engaging in
constitutionally protected speech." Vargas-Harrison v. Racine
Unified School District, 272 F.3d 964, 970 (7th Cir. 2001).  To
prevail on her First Amendment retaliation claim, Fredrickson must
show that (1) she engaged in speech that the First Amendment
protects, and (2) her speech was "a substantial or motivating
factor in the defendant[s'] challenged actions." Id. (citation and
internal quotation marks omitted).  With respect to the first
element, we ask "(1) whether the public employee spoke on matters
of public concern; and (2) whether 'the interests of the
[employee], as a citizen, in commenting upon matters of public
concern' outweigh 'the interest of the State, as an employer, in
promoting the efficiency of the public services it performs through
its employees.'" Id. at 971 (quoting Pickering v. Board of Educ.,
391 U.S. 563, 568 (1960).).  This second prong ordinarily requires
a fact-specific, multi-factor inquiry (so-called "Pickering
balancing"), but that analysis is unnecessary when the employee
holds a policymaking position. Bonds v. Milwaukee County, 207 F.3d
969, 977 (7th Cir. 2000) ("[T]he government employer's need for
political allegiance from its policymaking employee outweighs the
employee's freedom of expression to such a degree that it obviates
Pickering balancing.").  Although Fredrickson alleges "the type of
speech that triggers this corollary to the Pickering analysis,"
Vargas-Harrison, 272 F.3d at 973-74 — that is, speech criticizing

- 13 -

her superiors and related to her job duties — we have already concluded that defendants have not established that "village clerk" is a policymaking position.  They have not attempted to show that any of the <u>Pickering</u> factors support dismissal, and Fredrickson's allegations otherwise state a claim under Section 1983.  (Compl. ¶¶ 19, 21 (Alleging that the defendants acted under color of Illinois law and that plaintiff's political speech was a motivating factor in defendants' decision to replace her.).)  Accordingly, we deny their motion to dismiss Count I of plaintiff's complaint.

**C.   Procedural Due Process**

Fredrickson alleges that she was wrongfully terminated as village clerk without due process of law.  "To state a procedural due-process claim, a plaintiff must allege (1) deprivation of a protected interest, and (2) insufficient procedural protections surrounding that deprivation."  <u>Michalowicz v. Village of Bedford Park</u>, --- F.3d ---, 2008 WL 2357104, *3 (7th Cir. June 11, 2008). The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1; <u>see also</u> <u>American Mfrs. Mut. Ins. Co. v. Sullivan</u>, 526 U.S. 40, 59 (1999) ("The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'").  Fredrickson claims a protected property interest in her former position as village clerk, and a liberty interest in future employment benefits

- 14 -

that she claims were lost when the defendants "impugned her good name, reputation, honor and integrity." (Pl. Compl. ¶ 22.)

### 1.    Liberty Interest

According to Fredrickson, the defendants "wrongfully implicated [her] as being at fault" for the Village's financial difficulties. (Compl. ¶ 22.) Not every false statement that affects an employee's reputation states a claim for deprivation of a liberty interest. The statements must "rise to the level of accusations of criminality, dishonesty or job-related moral turpitude." Pleva v. Norquist, 195 F.3d at 916 (upholding dismissal). Falsely claiming that Fredrickson was responsible for the Village's financial woes, when in fact they were attributable to some other cause, does not rise to that level. See id.; Head v. Chicago School Reform Bd. of Trustees, 225 F.3d 794, 802 (7th Cir. 2000) (The statements must "so sully" the plaintiff's reputation that she "will essentially be blacklisted" in her chosen profession.). Moreover, her allegations concerning the effect of defendants' comments are vague. She alleges that she has lost "salary" — which may be attributable to her termination as village clerk (presumably a paid position) — and "earning capacity." (Compl. ¶ 25.) The latter suggests that her employment prospects may have been affected, but not that she has been or will be "blacklisted" based on defendants' comments. Fredrickson has not

- 15 -

stated a claim that the defendants deprived her of a liberty interest without due process of law.

   2.   *Property Interest*

   Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." <u>Board of Regents v. Roth</u>, 408 U.S. 564, 577 (1972); <u>see also</u> <u>Ulichny v. Merton Community School Dist.</u>, 249 F.3d 686, 700 (7th Cir. 2001) ("[F]ederal property interests under the 14th Amendment usually arise from rights created by state statutes, state or municipal regulations or ordinances, and contracts with public entities."). Fredrickson argues that the Illinois Municipal and Election Codes, the Village's personnel policy manual and the Village's ordinances gave her a protected property interest in her position as clerk. Defendants challenge Fredrickson's argument on each ground.

   a.  *Illinois Municipal and Election Codes*

   The key provision of the Municipal Code provides as follows:

§ 3.1-25-90. Election or appointment of clerk; term; vacancy.

(a) Any village of fewer than 5,000 inhabitants may, by resolution adopted by not less than two-thirds of the village board, choose to have a clerk appointed by the village president with the concurrence of the village board. Otherwise, at the election for trustees in each village and incorporated town . . . a clerk of the village or incorporated town shall be elected who shall

- 16 -

hold office for a term of the same length of time as
provided in this Article 3.1 for the mayor in a city . .
. .

(b)  In any village where the clerk is appointed as
provided in this Section, the clerk may later be elected,
but only after a referendum initiated and held as
provided in this Section.

Municipal Code, 65 ILCS 5/3.1-25-90.  Fredrickson claims that when
she was first appointed village clerk in 1995, the Village had
fewer than 5,000 inhabitants.  (Compl. ¶ 7; Pl. Mem. in Response to
Def.'s Motion to Dismiss (hereinafter, "Pl. Resp."), at 7.)  At
some point thereafter, but prior to her termination in 2007, the
population of the Village grew to exceed 5,000 inhabitants.
(Compl. ¶ 8.)  Fredrickson interprets the statute to require the
Village to elect (not appoint) its village clerk once it clears the
5,000 inhabitant threshold.  At that point, she argues, the
Village's prior resolution was a nullity.  Because no clerk was
elected to replace her, she argues that she was entitled to remain
in the position.  See 65 ILCS § 5/3.1-10-50 (Providing that in the
event of a vacancy by reason of a "failure to elect or qualify" the
"incumbent shall remain in office until the vacancy is filled.").[4]
In effect, Fredrickson argues that she has been unlawfully

---

[4/]  She also argues that her interpretation is bolstered by 65 ILCS §§
5/3.1-20-5 ("[t]he city clerk . . . shall be elected at the same time that the
mayor is elected") and 5/3.1-30-5 (listing officers that the president may
appoint, not including "clerk").  First, section 5/3.1-20-5 applies to cities,
not villages.  Second, her argument with respect to section 5/3.1-30-5 proves too
much.  If that provision meant that the president could not appoint the village
clerk, then 65 ILCS 5/3.1-25-90 ("Election *or appointment* of clerk") would be
meaningless.

- 17 -

appointed each term since the Village exceeded 5,000 inhabitants, but that she is nevertheless entitled to retain her position because she was lawfully appointed prior to that date and has not been lawfully replaced.  Defendants read the statute differently. Relying on subsection (b), they contend that the Village may continue to appoint its village clerk until the Village's citizens pass a referendum making that office elective.  We conclude that the defendants' interpretation is correct.  The statute indicates that the population threshold is measured at one time only, _i.e._, when the village board resolves to fill the clerk position by presidential appointment.  A clerk appointed by the village president pursuant to such a resolution is "appointed as provided in this Section" notwithstanding the fact that the Village later exceeds 5,000 inhabitants.  Thereafter, the only statutory mechanism for overriding the Village's decision to appoint its clerk is the referendum described in subparagraph (b).  The Village has not passed such a referendum.

Our interpretation does not necessarily end the argument, as Fredrickson insists that the Election Code — read "in _pari materia_" with the Municipal Code — requires that the clerk be elected.  (Pl. Resp. at 10.)  We have no difficulty reconciling the Election Code with our interpretation of § 3.1-25-90.  See United Citizens of Chicago & Illinois v. Coalition to Let the People Decide in 1989, 531 N.E.2d 802, 805 (Ill. 1988) (emphasizing that the Municipal

- 18 -

Code and the Elections Code must be harmonized).  For example, Fredrickson argues that 10 ILCS 5/2A-30 supports her claim that the village clerk must be elected.  (Pl. Resp. at 10.)  That provision states that "[i]n villages and incorporated towns with a population of less than 50,000, a clerk shall be elected at the consolidated election in every other odd-numbered year when the clerk is elected for a 4 year term, and in each odd-numbered year when the clerk is elected for a 2 year term."  Elections Code, 10 ILCS 5/2A-30; <u>see also</u> 10 ILCS 5/2A-27 (establishing a similar procedure for cities). This provision establishes when (every odd-number year or every other odd-numbered year) the clerk "shall be elected," it does not require elections when another Illinois statute authorizes appointment.  The same holds true for the Municipal Code provisions that prescribe the procedures governing municipal elections.  <u>See</u> 65 ILCS 5/2-3-7 ("First election of officers."); 65 ILCS 5/3.1-10-50(d) ("Events upon which an elective office becomes vacant in municipality with population under 500,000.").  Section 5/3.1-25-90(a) specifically authorizes the village president to appoint the clerk pursuant to a lawful resolution of the village board; these other provisions do not take that authority away.[5]

---

[5]/   Fredrickson also relies on <u>City of Springfield v. Board of Election Com'rs of City of Springfield</u>, 473 N.E.2d 1313 (Ill. 1985).  That case merely stands for the proposition that a court can compel a municipality to comply with the Municipal Code's requirements.  The Code provisions that the court construed in that case do not apply here.

- 19 -

Before we move on, we will briefly address defendants'
borderline frivolous motion for sanctions. Defendants insist that
Fredrickson's due process claim is predicated on the false
assertion that she was elected (not appointed) village clerk.
(Defs.' Reply in Supp. of Their Mot. for Sanctions at 1, 3.)
Fredrickson's complaint is perhaps not as clear as it could be,
(see Compl. ¶¶ 8, 22), but we do not think that it can be
reasonably interpreted to allege that she was elected village
clerk.  If there was any doubt on this score (reasonable or
otherwise), plaintiff's counsel dispelled it in a letter he sent to
defendants' counsel one month before defendants filed their motion.
(See Letter of Glenn R. Gaffney dated Dec. 3, 2007, attached as Ex.
C. to Pl.'s Resp. to Defs.' Mot. for Sanctions ("[Y]our proposed
Motion details a history of Sue Fredrickson as an appointed Village
clerk.  Plaintiff's Complaint at paragraph eight does not assert
otherwise.").)  The letter goes on to explain Fredrickson's
position that Illinois law entitled her to retain her position as
village clerk until replaced by election in the manner we have just
described.  We disagree with her interpretation of the relevant
statutes, but the argument is well within the bounds of appropriate
advocacy. Alliance to End Repression v. City of Chicago, 899 F.2d
582, 583 (7th Cir. 1990) ("It is essential to maintain the line
between vigorous advocacy (which the City engaged in) and frivolous
conduct.").  More to the point, it should have been abundantly

- 20 -

clear to defendants before they filed their sanctions motion that they had misunderstood plaintiff's argument.    Their motion is denied.

      *b.  Personnel Policy Manual*

      Fredrickson also alleges that the Village's "Personnel Policy Manual" establishes a property interest in her former position as village clerk.    See <u>Duldulao v. Saint Mary of Nazareth Hosp.</u> <u>Center</u>, 505 N.E.2d 314, 318-19 (Ill. 1987) (A personnel policy manual may create a property interest in continued employment.). The Policy Manual provides that "no Village employee may be appointed, promoted, dismissed or retained on the basis of his/her political activities or views." (Personnel Policy Manual, attached as Ex. B to Pl.'s Resp. to Defs.' 12(b)(6) Motion to Dismiss, at § 5.12.)  Even assuming that this provision, standing alone, created a property right in continued employment, the Policy Manual goes on to expressly disclaim creating any such rights:

> Nothing in this manual shall be construed to (1) give any employee of the Village any right to continuation of benefits or policies herein stated; (2) be evidence of any agreement or understanding expressed or implied that the Village will employee or continue to employee any particular employee at any particular rate of remuneration or with any benefit outlined herein; or (3) create any rights, and therefore nothing contained herein represents any type of contract of employment.

(Personnel Policy Manual § 1.1.)  Fredrickson points out that at least one Illinois court has held that contract rights may arise from a personnel policy manual notwithstanding such a disclaimer.

- 21 -

See Perman v. ArcVentures, Inc., 554 N.E.2d 982, 987 (Ill. App. 1990).  But as our Court of Appeals observed in Workman v. United Parcel Service, Inc., 234 F.3d 998, 1001 (2000), there is contrary authority from other Illinois courts.  See Davis v. Times Mirror Magazines, Inc., 697 N.E.2d 380, 388 (Ill. App. 1998) ("[D]isclaiming language in an employee handbook precludes the formation of an employment contract."); see also Habighurst v. Edlong Corp., 568 N.E.2d 226, 228 (Ill. App. 1991) ("The weight of authority in this state has held the existence of disclaiming language in an employee handbook to preclude the formation of a contract.").  Perman has been widely criticized in this district, see Weiss v. New York Life Ins. Co., 1995 WL 115520, *4 n. 4 (N.D. Ill. Mar. 14, 1995) (collecting cases), and our Court of Appeals described its reasoning as "paternalistic in the extreme." Workman, 234 F.3d at 1001.  We agree, and conclude that the Illinois Supreme Court would enforce the manual's clear, unequivocal disclaimer.[6]

     *c.  Village Ordinance*

---

[6]  Fredrickson also argues that "[a]s the Personnel Code was passed by resolution of the Board, the declaration can create a property entitlement without regard to any contract law analysis."  (Pl. Resp. at 12.)  She cites Domiano v. River Grove, 904 F.2d 1142, 1148 (7th Cir. 1990), but that case does not support her argument.  In Domiano, the Court concluded that a village ordinance providing for a one-year term of service created a protectable property interest in employment during that term.  Id.  Nothing in the Court's opinion supports Fredrickson's claim that a personnel policy manual containing a clear disclaimer creates a property interest in employment.

- 22 -

Plaintiff also argues that she was terminated prior to the end of her appointed term, even if no election was required to replace her.  Although this argument receives relatively short shrift in the parties' briefs, we believe that it is sufficient to state a claim for a procedural due process violation.  Plaintiff alleges that she was "terminated" on July 13, 2007.  Defendants insist that they simply chose not to reappoint her to another one-year term, but they have not cited any materials that would warrant awarding summary judgment in their favor on this disputed issue.[7]  Even assuming that she had served her full one-year appointed term before July 13, 2007, the Village Code provides that she was to "remain in office until a successor [was] appointed and qualified."  See Village Ord. § 1-5C-2.  Nowaczyk and the board did not appoint a successor until July 17, 2007.  In Burrell v. City of Matoon, 378 F.3d 642 (7th Cir. 2004), the plaintiff alleged that he was terminated as city clerk by the incoming city council one day before his term expired.  Id. at 648.  Specifically, he alleged that "at the conclusion of his meeting with the incoming council on April 30, 2001, he asked if he should vacate the premises immediately; the defendants allegedly responded affirmatively."

---

[7] Defendants attach board minutes dated May 11, 2000 and October 20, 2005 to their motion to dismiss reflecting the board's decision to appoint Fredrickson as village clerk.  But they have not provided board minutes reflecting her final one-year appointment prior to their decision to replace her.  It is unclear, moreover, how long Fredrickson had served since her last appointment when the defendants terminated her.  Cf. Domiano, 904 F.2d at 1148 (An employee has a property interest in his or her full appointed term.).

- 23 -

Id.  If the plaintiff had supported this allegation with an affidavit or deposition testimony, such evidence "likely would have passed muster under § 1983's deprivation prong."  Id.  But the Court concluded that the defendants were entitled to summary judgment because,

> nothing in the evidence supplied by either party suggests that the termination was effective April 30, 2001, rather than May 1, 2001 upon the conclusion of Burrell's term and the appointment of his replacement.  Burrell was not deprived of his job, thus no process was due; he suffered no constitutional deprivation at the hands of the individual defendants or the City.

Id.  By contrast, this case is still at the pleading stage and we accept as true Fredrickson's allegation that she was "terminated" on July 13, 2007 and she is entitled to the inference that her termination is effective as of that date.  Jang, 122 F.3d at 483 (On a motion to dismiss, we "construe all reasonable inferences in favor of the plaintiffs.").  We conclude that she has sufficiently alleged that she was deprived of a protected property interest.

Neither party addresses the second prong of the due-process analysis.  On the facts alleged, it appears that Fredrickson was entitled to "some kind of hearing" before she was terminated.  See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (Due process "requires some kind of hearing prior to the discharge of an employee who has a constitutionally protected property interest in his employment.").  She alleges that she received "no hearing of any nature" and no "opportunity to clear her good name."  (Compl.

- 24 -

¶ 23.)   We conclude that Fredrickson has adequately alleged deprivation of a Constitutional right.  We emphasize, however, that in light of both Burrell and our decision rejecting Fredrickson's interpretation of Illinois' Municipal Code, her claim is tenuous. If, in fact, her termination was effective July 17, 2007, and she had at that point served her entire appointed term, then she was not entitled to any process because she "suffered no constitutional deprivation."  Burrell, 378 F.3d at 648.

### C.   Qualified Immunity

The individual defendants contend that they are entitled to qualified immunity.  Qualified immunity shields those defendants from suit unless Fredrickson can demonstrate "(1) 'the violation of a constitutional right' that is (2) 'clearly established at the time of the alleged violation, so that a reasonable public official would have known that his conduct was unlawful.'"  Green v. Butler, 420 F.3d 689, 700 (7th Cir. 2005) (quoting Sonnleitner v. York, 304 F.3d 704, 716 (7th Cir.2002)).  But Fredrickson was not required to anticipate defendants' qualified-immunity defense and plead factual allegations sufficient to defeat it.  See Alvarado v. Litscher, 267 F.3d 648, 651-52 (7th Cir. 2001); see also Jacobs v. City of Chicago, 215 F.3d 758, 775 (7th Cir. 2000) (Easterbrook, J., concurring) ("Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground of dismissal.").  Nevertheless, dismissal may be appropriate "where the plaintiff asserts the violation of a

- 25 -

broad constitutional right that had not been articulated at the
time the violation is alleged to have occurred." Jacobs, 215 F.3d
at 765 n.3.  "In that case, while the plaintiff may have stated a
claim, it is not one 'upon which relief can be granted' and a court
may properly address this purely legal question under Rule
12(b)(6)." Id.

Accepting Fredrickson's allegations as true, her right to due
process of law was clearly established at the time that defendants
terminated her.  See Loudermill, 470 U.S. at 542 (Due process
"requires some kind of hearing prior to the discharge of an
employee who has a constitutionally protected property interest in
his employment."); Domiano, 904 F.2d at 1148 (Concluding that a
village ordinance providing for a one-year term of service created
a protected property interest in employment during that term.); see
also Burrell, 378 F.3d at 648 (Assuming, without deciding, that
terminating the city clerk one day prior to the end of his
appointed term would deprive him of a protected property
interest.).  With respect to her First Amendment claims, the court
in Wilhelm denied the defendants' motion for summary judgment on
the plaintiff's claim that she was impermissibly denied appointment
as city clerk because of her political affiliations.  See Wilhelm,
409 F.Supp.2d at 999-1000.  More generally, it was clearly
established that employees who perform only ministerial duties
cannot be dismissed for their political beliefs.  See Riley, 425

- 26 -

F.3d at 360 ("In general, employees who have merely ministerial duties — who really have very little discretion — . . . are not within the exception for policymakers."); Kiddy-Brown v. Blagojevich, 408 F.3d 346, 357 (7th Cir. 2005) ("[W]e must conclude that, by 2003, it was well-established that the First Amendment prohibits a state official from dismissing, on political grounds, an employee who was not charged with policymaking duties."); see also Flenner v. Sheahan, 107 F.3d 459, 465 (7th Cir. 1997) (The plaintiff is not required to cite case law pertaining to the very employment position in question.).    Likewise, it was clearly established that the government cannot retaliate against non-policymaking employees for engaging in constitutionally protected speech.  See, e.g., Myers v. Hasara, 226 F.3d 821, 828-29 (7th Cir. 2000) (reversing decision granting qualified immunity to the city mayor and health department inspector responsible for suspending a "whistleblower" employee).  As the Flenner Court pointed out, we may be required to revisit this issue after the parties have developed a factual record.  107 F.3d at 465.  But here, at the pleading stage, defendants are not entitled to qualified immunity.

### D.    Defendant Kaptur

Defendant Kaptur contends that the Village, and not any individual trustee, has "the appointing power for the position of village clerk."  (Def. Mem. at 11 (citing 65 ILCS 5/3.1-25-90).) In defendants' reply, she makes the somewhat different argument

- 27 -

that Nowaczyk, as village president, "holds the power to appoint or reappoint the Village Clerk." (Def. Reply at 15.)  In fact, the statute provides that the clerk is appointed by "the village president with the concurrence of the village board." See 65 ILCS 5/3.1-25-90; see also Village Ord. 1-5C-1 ("The Village Clerk shall be appointed by the Village President with the concurrence of the Village Board of Trustees.").  Accordingly, Kaptur, as trustee, participated in the decision not to appoint Fredrickson to another term.  Fredrickson further alleges that Kaptur was the driving force, along with Nowaczyk, behind the decision to terminate her:

> Since a section 1983 cause of action is against a "person," in order "[t]o recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right." Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995) (citation omitted). To be personally responsible, an official "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." Id. (citation and internal quotation omitted).

Johnson v. Snyder, 444 F.3d 579, 583-84 (7th Cir. 2006).  Kaptur may not have been in the room when Nowaczyk terminated Fredrickson, but it is a reasonable inference from the complaint's allegations that she facilitated and condoned his actions.  Fredrickson alleges at numerous points in her complaint that Kaptur participated in the harassment campaign that culminated in her termination. (Compl. ¶¶ 13, 16-17.)  These allegations are sufficient to state a claim against Kaptur individually.

**CONCLUSION**

- 28 -

Defendants' motion to dismiss (11) and motion for sanctions (14) are denied.  A status hearing is set for September 3, 2008 at 11:00 a.m.


DATE:      August 4, 2008

ENTER:     _____

John F. Grady, United States District Judge